STATE, EX REL. JAMES P. ENGLISH, COUNTY ATTORNEY, APPELLEE, v. CHARLES E. FANNING ET AL., APPELLANTS.

FILED NOVEMBER 12, 1914. No. 17,670.

1. Nuisance: ABATEMENT: PURPOSE OF ACT: CONSTRUCTION. Chapter 63, laws 1911, is entitled "An act to enjoin and abate houses of lewdness, assignation and prostitution, to declare the same to be nuisances," etc., and it is designed to provide means of suppressing houses devoted to such purposes. A house maintained as a place for lewd men and women to congregate for immoral purposes is within the terms of the statute.

2. ——: ——: ENFORCEMENT OF ACT. The statute is strenuous; there should be proof that the place complained of is in fact a house of lewdness, assignation or prostitution. When that fact is satisfactorily established, the statute should be liberally construed in applying the remedy given.

3. ——: ——: EVIDENCE: "GENERAL REPUTATION." The general reputation of the house and of the people, men and women, who frequent it may be shown, but it must be the general reputation among people who are in the position to form an opinion. Proof of such general reputation is received as other evidence in the case, and is not of itself necessarily conclusive.

4. ——: STATUTE TO ABATE DISORDERLY HOUSE: VALIDITY: QUÆRE. The fourth paragraph of the syllabus of our former opinion in this case (96 Neb. 123) is withdrawn, and the question whether section 8782, Rev. St. 1913, providing for a tax of $300, and the payment of a fraction thereof to the attorney prosecuting the case, is unconstitutional is not decided.

5. Quære. Whether that part of section 8779, Rev. St. 1913, which provides that, if the existence of a nuisance is established in a criminal proceeding (see Rev. St. 1913, secs. 8783, 8845), an order of abatement shall be entered the same as in the action in equity provided for in preceding sections, is constitutional and valid, quære.

6. Constitutional Law: NUISANCE: VALIDITY OF STATUTE. Our former decision in this case as to the constitutionality of chapter 63, laws 1911, except as above indicated, is adhered to.

7. Nuisance: SUIT TO ABATE: SUFFICIENCY OF EVIDENCE. The evidence indicated in this and our former opinion herein is found insufficient to support the decree.

Rehearing of case reported in 96 Neb. 123. *Former judgment vacated, and judgment of district court reversed.*

SEDGWICK, J.

On the former hearing in this case we found that the portion of the decree "which enjoins Fanning and Prenica from using the premises for the purpose of lewdness, assignation or prostitution is not appealed from, and is therefore final," and that the "defendants make no complaint of the findings and decree so far as it finds that unlawful practices were indulged in and enjoins the continuance of the same in the future." 96 Neb. 123. The record is large and somewhat complicated, but upon further consideration we think it ought to be considered that the appeal has brought up the whole case for consideration.

The defendants strenuously contend that the statute under which these proceedings are brought (laws 1911, ch. 63) is unconstitutional and void. Upon the former hearing it was practically conceded that section 8 of the act (Rev. St. sec. 8782) is unconstitutional, and it was so considered accordingly. Very soon after our former decision the supreme court of Minnesota, in *State v. Ryder,* 126 Minn. 95, 147 N. W. 953, had occasion to consider the constitutionality of a very similar statute. The discussion in that case covers all objections raised in the case at bar, unless it is the one which will be herein separately considered. The discussion by the Minnesota court of the constitutionality of their statute corresponding to our section 8 is quite full and complete, several authorities being cited, and the court concludes that the statute is constitutional and valid. The reasoning seems satisfactory, but it is not necessary now to decide as to the constitutionality of section 8 of our act, and we content ourselves with withdrawing what was said upon that point in the former decision of this case.

As we have already said, the opinion of the Minnesota court in the case above cited, and the opinion in *State v. New England F. & C. Co.,* 126 Minn. 78, decided at the same time by that court, seem to satisfactorily dispose of all

questions as to the constitutionality of such legislation, except one which is perhaps peculiar to our statute.

Section 5 of the act (Rev. St. sec. 8779) provides: "If the existence of the nuisance be established in an action as provided in this act, or in a criminal proceeding, an order of abatement shall be entered as a part of the judgment in the case, which order shall direct the removal from the building or place of all fixtures, furniture, musical instruments or movable property used in conducting the nuisance, and shall direct the sale thereof in the manner provided for the sale of chattels under execution, and effectual closing of the building or place against its use for the purpose, and so keeping it closed for a period of one year, unless sooner released." Section 8783 (208) Rev. St. 1913, is as follows: "Every house, building, tent, boat, wagon or other vehicle, or any other structure, situated in this state, used and occupied as a house or place of ill fame or for purposes of prostitution, shall be held and deemed a public nuisance; and any person owning, or having the control of, as guardian, lessee or otherwise, such house, building, tent, boat, wagon or other vehicle, or any other structure, and knowingly leasing or subletting the same, in whole or in part, for the purpose of keeping therein a house or place of ill fame, or knowingly permitting the same to be used or occupied for such purpose, or using or occupying the same for such purpose, shall for every such offense be fined in any sum not exceeding one hundred dollars, or be imprisoned in the county jail not to exceed three months." This was section 210 of the criminal code prior to the revision of 1913, as amended by ch. 173, laws 1907. The amendment included other buildings and structures than those named in the original act and increased the penalty. It is insisted that the act under which this prosecution was brought is unconstitutional because it amended sections 8783 (208) and 8845 (270) Rev. St. 1913. It would seem that section 5 of the act, by the words "or in a criminal proceeding," attempts to amend section 210 of the criminal code (Rev. St. 1913, sec. 8783 (208)) by adding an additional penalty upon conviction under that

section. If this should be considered as an amendment to that section within the meaning of section 11, art. III of the constitution, it would not necessarily render the whole act invalid, since those words are separable from the act and may be omitted without affecting the remainder of the act.

Except as herein noted, we are satisfied with our former conclusion as to the constitutionality of the act. This requires us to consider whether the evidence justifies the finding that the building in question is used for the purpose of lewdness, assignation, or prostitution, within the meaning of the act. It is entitled "An act to enjoin and abate houses of lewdness, assignation and prostitution, to declare the same to be nuisances," etc. Laws 1911, ch. 63. Section 3 of the act provides: "Evidence of the general reputation of the place shall be admissible." This does not contemplate receiving testimony as to the opinions of personal enemies of the proprietor, nor their declarations, though publicly made, but contemplates proof of what is generally reported among those who are in a position to form an opinion of the character of the house. Mr. Bishop says: "There must be the keeping of a house. For a woman to be a common bawd, or merely to live alone and receive one man or many, is not to keep a bawdy house. And more women than one must live or resort together to make such a house. Therefore permitting a single act of illicit intercourse will not alone constitute the offense." 1 Bishop, Criminal Law (7th ed.) sec. 1085. It has been held that the reputation of the keeper of the house, and of the people, both men and women, who frequent it, may be proved, but it is generally held that the reputation of the house alone is not sufficient, and in an early case in Wisconsin it was held: "Proof that the reputation of the house, or of its frequenters and the defendant was bad in that respect, is not *conclusive* of defendant's guilt." *State v. Brunell,* 29 Wis. 435. This case was cited with approval by this court in *Drake v. State,* 14 Neb. 535. This was a prosecution under section 210 of the criminal code; Rev. St. 1913, sec. 8783 (208). In discussing the evidence nec-

essary to establish the charge, the court emphasized the
fact that the evidence was that the house was not used
for any other purpose. "No family lived in it." In a
note under *Beard v. State,* 4 L. R. A. 675, it is said that
"general reputation is not sufficient evidence," and many
authorities are cited as supporting that proposition. Other
authorities are cited as holding that the character of the
house may be proved by common reputation, but in such
case "the proof must directly implicate the person charged
with keeping it." The title of the act reminds us that it
is houses of lewdness, assignation and prostitution that
are to be dealt with, and in determining the character of
the house in question it is of great, if not controlling, im-
portance to inquire whether it is principally devoted to a
legitimate purpose.

The object of the statute is to provide an efficient and
prompt means for suppressing the so-called "red light dis-
trict" in communities that are unwilling to tolerate such
a nuisance. The statute is not intended as a means of
regulating the morals of private individuals, nor to prevent
immorality in hotels, mainly devoted to the accommodation
of families and moral, well-behaved people. Of course, if
a hotel becomes "a house of lewdness, assignation and
prostitution," it will not escape the ban of the statute be-
cause some innocent people are deceived and patronize
the house in good faith as a hotel. It is not necessary to
prove that the owner of the property knew that it was be-
ing used for the prohibited purposes; if the proprietor,
that is, the person in control and management of the house,
has such knowledge it is sufficient.

The general character of the evidence is stated in our
former opinion (96 Neb. 123) and it was there said: "The
evidence as to the hotel having an evil reputation was con-
flicting. * * * Whatever the actual fact may be, the
testimony in the record upon this point, standing alone,
would not justify an order declaring the hotel to be a nui-
sance." It might be further suggested that much of the
evidence intended to show the reputation of the house is
indefinite, and some of it incompetent. The witnesses were

not always confined to general reputation, but were allowed to state their belief and how they individually regarded the use of the hotel. The evidence of "paid decoys or informers," referred to in our former opinion, related mostly to the doings of vile persons sent to the hotel for that purpose, after this action was begun. The statute is a wholesome one. It ought to be liberally construed to enable virtuous communities to protect themselves against public places kept for lewd purposes. It may be that the authorities of Omaha have begun with the most shameless bawdy house within that city, but the evidence taken at the trial does not convince us that such is the fact. If this hotel is devoted to such purposes, that is, if it is a house of lewdness, assignation, or prostitution, the prosecutor will undoubtedly be able to establish that fact.

Our former decision is therefore set aside, and the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.

FAWCETT, J. I dissent from the order setting aside our former decision. I think it should in all respects be adhered to.

ROSE, J., not sitting.